UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUTCH & ASSOCIATES, INC. d/b/a <br> HUTCH'S RESTAURANT and DELAWARE <br> RESTAURANT HOLDINGS, LLC d/b/a <br> REMINGTON TAVERN & SEAFOOD <br> EXCHANGE, <br><br> Plaintiffs, <br><br> v. <br><br> ERIE INSURANCE COMPANY OF NEW <br> YORK, ERIE INDEMNITY COMPANY d/b/a <br> ERIE INSURANCE GROUP, ERIE <br> INSURANCE COMPANY, ERIE INSURANCE <br> PROPERTY & CASUALTY COMPANY, ERIE <br> INSURANCE EXCHANGE, and FLAGSHIP <br> CITY INSURANCE COMPANY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendants Erie Insurance Company of New York ("Erie NY"), Erie Indemnity Company d/b/a Erie Insurance Group ("EIG"), Erie Insurance Company ("Erie IC"), Erie Insurance Property & Casualty Company ("Erie IPC"), Erie Insurance Exchange ("Erie Exchange"), and Flagship City Insurance Company ("Flagship") (collectively "Defendants"), by and through undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA"), hereby remove to this Court the lawsuit styled *Hutch & Associates, Inc. d/b/a Hutch's Restaurant; and Delaware Restaurant Holdings, LLC d/b/a Remington Tavern & Seafood Exchange, for themselves and on behalf of a class of similarly situated policyholders v. Erie Insurance*

*Company of New York, et al.*, No. 804532/2020, filed in the Supreme Court of Erie County, New York.  In support of this Notice of Removal, Defendants state as follows:

**I.    INTRODUCTION**

1. On May 21, 2020, Plaintiffs filed this action on behalf of themselves and a putative class.  In accordance with 28 U.S.C. § 1446(a), copies of the Summons and Complaint are attached as <u>Exhibit A</u>.

2. According to the Complaint, Plaintiffs filed this suit on behalf of themselves and a putative class consisting of "all policyholders of all-risk commercial insurance policies issued by any named Defendant," whose policies allegedly do not contain a virus exclusion, and who allegedly suffered "business interruption" or "sue and labor" losses due to the novel coronavirus and related government orders.  Compl. ¶¶ 4, 82.  Plaintiffs and the putative class seek compensatory damages for alleged breach of contract, statutory remedies, declaratory relief, and costs and attorneys' fees.

3. The Supreme Court of Erie County is within the Western District of New York.  28 U.S.C. § 112(d).  This notice is therefore properly filed in this court under 28 U.S.C. § 1441(a).

4. As set forth below, this action is removable under CAFA, as there is minimal diversity, more than 100 class members, and the amount in controversy exceeds $5,000,000.

**II.    THE PARTIES**

5. Plaintiff Hutch & Associates, Inc. d/b/a Hutch's Restaurant ("Hutch") is a New York corporation with its principal place of business located in Buffalo, New York.  Compl. ¶ 7.

6. Plaintiff Delaware Restaurant Holdings, LLC d/b/a Remington Tavern & Seafood Exchange is a New York corporation with its principal place of business located in North Tonawanda, New York. *Id.* ¶ 8.

7. The Complaint alleges that Defendants, with the exception of Erie NY, are all Pennsylvania corporations. *Id.* ¶¶ 9-11.

8. The Complaint alleges that Defendant Erie NY is a New York corporation. *Id.* ¶ 11(a).

### III. PLAINTIFFS' ALLEGATIONS

9. The Complaint alleges that Defendants issued commercial property insurance policies to Plaintiffs and other members of the putative class.[1] *Id.* ¶¶ 15-16, 82. Specifically, Plaintiffs allege that EIG and Erie IC issued and delivered the named Plaintiffs' policies. *Id.*

10. Plaintiffs define all other Defendants as "stock insurance companies of EIG" and refer to those entities as "Affiliates" throughout the Complaint. *Id.* ¶ 11. Plaintiffs allege that the "Affiliates" assisted EIG and Erie IC with the operation of phone lines and a website through which policyholders could report claims. *Id.* ¶¶ 52-54. Plaintiffs also contend that the "Affiliates" participated in preparing a form response to the New York State Department of Financial Services' request from insurers for information regarding COVID-19 coverage under their policies ("DFS Response"). *Id.* ¶¶ 60-68.

11. Plaintiffs allege that their "employees, customers, and/or vendors" were exposed to, diagnosed with, exhibited symptoms consistent with, and/or were ordered by civil authorities and/or their medical providers to quarantine or to suspend normal business activities. *Id.* ¶ 41.

---

[1] The facts set forth herein derive from Plaintiffs' Complaint. Defendants do not admit the facts alleged in the Complaint, expressly deny liability to Plaintiffs and the putative class, expressly deny that certification of any class is appropriate or permitted under the applicable rules, and reserve their rights to challenge the legal sufficiency of the Complaint.

Plaintiffs further allege that the novel coronavirus was present in, on, or around Plaintiffs' and putative class members' insured premises and property in the immediate area of their premises, and that as a result the virus somehow allegedly caused physical damage or loss under Defendants' commercial property insurance policies. *Id.* ¶¶ 41-44. Similarly, Plaintiffs contend that civil authority orders issued throughout New York in response to the novel coronavirus, including a series of Executive Orders the Governor of New York issued, caused disruption to Plaintiffs' and putative class members' businesses, and that Defendants' policies allegedly provide coverage for such disruption. *Id.* ¶¶ 45-46.

12. Plaintiffs allege that they timely submitted claims for coverage of their losses. *Id.* ¶ 55.

13. The Complaint alleges that Defendants EIG and Erie IC erroneously denied Plaintiff Hutch's claims on March 30, 2020 and Plaintiff Remington's claims on March 31, 2020. *Id.* ¶¶ 71-72.

14. Plaintiffs allege that Defendants' denial of coverage "was predetermined and without regard to the individual circumstances of Plaintiffs or other insureds . . . ." *Id.* ¶ 58.

15. Finally, Plaintiffs allege that Defendants collectively prepared a non-conforming DFS Response regarding COVID-19 related coverage in an alleged attempt "to induce their insureds into not submitting claims related to or arising from COVID-19." *Id.* ¶¶ 61-68.

**IV.   THE COMPLAINT**

16. Based upon these allegations, Plaintiffs, on behalf of themselves and the putative nationwide Class, assert the following claims against Defendants:

- Count I asserts that Defendants breached their insurance coverage obligations under the policies issued to Plaintiffs and other putative class members by denying coverage for the alleged business losses and sue and labor losses incurred by Plaintiffs, by "unreasonably obstruct[ing] and

- prevent[ing] Plaintiffs and other Class members from receiving prompt payment for the insurance benefits to which they are entitled under the Policy," and by breaching their duty of good faith and fair dealing *Id.* ¶¶ 99-105.

- Count I also seeks "judgment providing declaratory relief of their rights under the Policy, determining that Defendants are liable to Plaintiff[s] and Class members for breach of contract, and that Plaintiff[s] and Class members have been damaged and are entitled to judgment against Defendants in an amount to be determined at trial, plus interest." *Id.* ¶ 107.

- Count II asserts a violation of New York General Business Law § 349 on the alleged basis that Defendants' statements in the DFS Response were inaccurate and misleading, that Defendants failed to reasonably investigate and pay claims in reckless and/or negligent disregard of their obligations under the policies, and that Defendants purportedly adopted a "practice, policy, or procedure [that] is willful, intentional and malicious with the ultimate intent and effect of depriving its insureds of coverage . . . ." *Id.* ¶¶ 108-129.

## V. THE REMOVAL NOTICE IS TIMELY.

17. This Notice of Removal is timely under 28 U.S.C. § 1446(b). The Complaint was filed on May 21, 2020 and served on June 16, 2020. Because removal is made within thirty days of service, this Notice of Removal is timely.

## VI. THE COMPLAINT SATISFIES ALL OF THE ELEMENTS FOR REMOVAL UNDER CAFA.

18. CAFA was enacted "with the purpose of . . . expanding the availability of diversity jurisdiction for class action lawsuits." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006). Thus, removal is proper under CAFA where, as here, a purported class action is filed in which: (a) there are 100 or more purported class members, (b) there is minimal diversity of citizenship, and (c) the aggregate amount in controversy for the entire proposed class exceeds $5,000,000, exclusive of costs and interests. 28 U.S.C. § 1332(d)(2); *Blockbuster*, 472 F.3d at 57. This action meets all the criteria for removal under CAFA.

### A.     The Putative Class Contains One Hundred or More Members.

19.     This case purports to be a "class action" within the meaning of CAFA because it was brought under a state statute or rule, namely, NY CLS CPLR, Art. 9, which authorizes an action to be brought by one or more representative persons as a class action if the underlying requirements are met.  *See* 28 U.S.C. § 1332(d)(1)(A)-(B); Compl. ¶¶ 82-90.  Plaintiffs contend that "Defendants issued *thousands* of commercial property insurance policies in New York containing provisions for business interruption and related coverage."  *Id.* ¶ 84 (emphasis added). Hence, on the face of the Complaint, there are potentially more than 100 policyholders in *New York alone*, and Plaintiff seeks certification of a *nationwide* class.

20.     Plaintiffs purport to bring this action "on behalf of a class consisting of all policyholders of all-risk commercial property insurance policies issued by any named Defendant . . . whose policies were in effect for any period of time on or after February 15, 2020, and through the end of the (i) declared emergency period or (ii) prohibitions, limitations, or restrictions of business property use under [government orders] . . . whose policies do not contain the Virus Exclusion or a substantially similar exclusion . . .[,] and who suffered BI [business interruption] or SL [sue and labor] losses as a result of" COVID-19 and related government orders.  *Id.* ¶ 82.  Plaintiffs do not confine the putative class to policyholders who have already filed claims seeking business interruption coverage, but rather, broadly define the putative class to include all the "thousands" of policyholders who have merely allegedly *suffered losses*.  *Id.* ¶ 82(d).

21.     Nationwide, Defendants have collectively issued 144,331 commercial policies with business interruption coverage that do not include an express virus exclusion.  *See* Declaration of Scott Morgason ("Morgason Dec."), <u>Exhibit B</u>, attached hereto, ¶ 6.  Defendants

Erie Insurance Company, Erie Insurance Exchange, and Erie Insurance Property & Casualty Company ("Issuing Defendants") are the only named Defendants that provide commercial policies with business interruption coverage. Morgason Dec. ¶ 5. To date, 5,146 claims have been made by policyholders who would potentially fit the class definition (that is, policyholders with policies that provide business interruption coverage containing no so-called "virus exclusion."). *Id.* ¶ 6. Thus, the Class as alleged by Plaintiffs is potentially as large as 144,331 putative class members. In short, Plaintiffs have clearly alleged a putative class containing more than 100 putative class members.

      **B.**      **The Putative Class Satisfies Minimal Diversity.**

22.      CAFA requires only "minimal diversity," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

23.      Plaintiffs allege that they are New York corporations with their respective principal places of business in Erie County, New York. Compl. ¶¶ 7-8.

24.      Defendant Erie NY is a New York corporation. *Id.* ¶ 11. Defendants EIG, Erie IC, Erie IPC, Erie Exchange, and Flagship are all Pennsylvania corporations. *Id.* ¶¶ 9-11. Thus, this case easily satisfies the minimal diversity requirement of CAFA because at least one, and in fact two, members of the putative class (both Plaintiffs) are citizens of a state different than at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

      **C.**      **The Amount In Controversy Greatly Exceeds $5 Million.**

25.      Defendants deny that Plaintiffs have stated any viable claims and also deny that Plaintiffs and the putative class members are entitled to any relief. Nevertheless, the allegations of the Complaint and the nature of Plaintiffs' claims make clear that the amount in controversy

exceeds CAFA's jurisdictional threshold of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2) and (6).

26. CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014). To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 89 (citation omitted). In the case at bar, the jurisdictional threshold has been met.

27. CAFA's amount in controversy requirement is satisfied where the proponent of federal jurisdiction "show[s] that it appears to a "reasonable probability" that the aggregate claims of the plaintiff class are in excess of $ 5 million." *Blockbuster*, 472 F.3d at 58. *See also Dart Cherokee*, 574 U.S. at 89 ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Cutrone v. Mortg. Elec. Registration Sys.*, 749 F.3d 137, 148 (2d Cir. 2014) (removal proper where defendant "alleg[ed] facts adequate to establish the amount in controversy in its notice of removal").

28. The amount in controversy is satisfied on the *possible* recovery if Plaintiffs and the class were to win on all of their claims; whether they are likely to recover anything based on the merits of the case is irrelevant to the amount in controversy analysis. *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) ("The jurisdictional determination is to be

made on the basis of the plaintiff's allegations, not on a decision on a merits."). *See also Andersen v. Walmart Stores, Inc.*, No. 16-CV-6488 CJS, 2017 U.S. Dist. LEXIS 22862, at *13 (W.D.N.Y. Feb. 17, 2017) (internal citation omitted) ("When assessing the jurisdictional amount, the Court considers the plaintiffs' allegations, not the likelihood of recovery.").

29. Defendants' good faith estimate of the stakes as alleged in the Complaint includes the three components of Plaintiffs' claims: (i) compensatory damages for alleged breach of contract; (ii) statutory damages under NY GBL § 349; and (iii) declaratory relief. In the aggregate, Plaintiffs' claims clearly demonstrate that the potential damages exceed the jurisdictional minimum.

### i. *Compensatory Damages For Breach Of Contract*

30. Plaintiffs provide no calculation or estimate of their own alleged damages or those of putative class members, but Defendants reasonably anticipate that class members will, on average, each seek tens of thousands of dollars in damages.

31. According to Plaintiffs, Defendants have issued "thousands" of policies, in New York alone, that contain business income protection coverage. Compl. ¶ 84. According to their records, Issuing Defendants have issued a total of 144,331 commercial policies with business interruption coverage nationwide without the so-called "virus exclusion" that would potentially fall within the proposed class. *See* Morgason Dec. ¶ 6.

32. Significantly, according to Defendants' records, during 2018 and 2019, Issuing Defendants paid over 1,450 business interruption claims at an average of more than $11,900 per claim. Morgason Dec. ¶ 7. This figure is a reasonable and conservative estimate of the damages each alleged member of the putative classes here may seek, as Plaintiffs claim that their

businesses and those of members of the putative classes were interrupted for lengthy periods of time. Compl. ¶ 47.

33. Assuming—conservatively—that only ten percent (10%), or approximately 14,433 policyholders, have suffered a covered loss, and further assuming that Defendants would, if coverage existed, pay the same approximate average amount ($11,900) on these claims as they have on past claims, it is reasonable to estimate that a potential payout on Plaintiffs' proposed putative class, if coverage existed, would exceed $171,752,700. Indeed, operating under the same assumptions as above, even if a mere *one percent* (1%) of policyholders received coverage for their claims, a potential payout of those claims would equal more than $17,175,389.

34. Of course, the above is an extremely conservative estimate of the amount in dispute in this case, for at least the following reasons: (a) the above minimum estimates are based on only a small percentage of policyholders making claims when in all likelihood many will; (b) the $11,900 reflects the ultimate *payment* to insureds for covered losses, not the amounts actually *sought* by insureds, which in a significant number of cases was higher than the payouts for covered losses; (c) the amount sought by each putative class member likely will be substantially in excess of $11,900 and likely will be multiples of that amount given the length of time encompassed by Executive Orders; and (d) the Plaintiffs in this case seek statutory penalties for themselves and members of the putative class. Even under this conservative estimate, the amount in controversy is significantly in excess of CAFA's $5 million minimum.

   ii.  ***Penalties Alleged Under NY CLS Gen Bus Law § 349***

35. In Count II, Plaintiffs allege a violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349. The statute permits the court to "increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars," in the event

of a willful or knowing violation.  N.Y. CLS Gen. Bus. § 349(h).  Hence, statutory treble damages of up to $1,000 could potentially be awarded to each putative class member.  The full amount of this statutory remedy should be included in the amount in controversy analysis.  *See Lee v. Equifax Info. Servs., LLC*, No. CV 13-4302 SI, 2013 U.S. Dist. LEXIS 176480, at *4 (N.D. Cal. Dec. 16, 2013) ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy is met") (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (noting that the court would count the statutory maximum for each violation towards the amount in controversy, even if plaintiffs did not expressly seek the maximum because that is the amount in controversy)).

36. While Defendants contend that § 349 does not apply, Plaintiffs allege that Defendants' alleged "willful, intentional, and malicious" conduct in making coverage determinations and in circulating the DFS Response violated the statute, entitling Plaintiffs and putative class members to statutory damages and statutory attorneys' fees.  Compl. ¶¶ 128-129.

37. The fact that Plaintiffs seek statutory remedies that *could* include such damages—even if Defendants dispute that putative class members are entitled to them—is sufficient to include such potential damages in the amount in controversy calculus.  *Andersen*, 2017 U.S. Dist. LEXIS 22862, at *17-18 (holding that each of the maximum penalties provided under N.Y. Gen. Bus. Law § 349, "when multiplied by the 10,000-plus class members, easily satisf[ied] [CAFA's] $5 million threshold.").  *See also Cohen v. Casper Sleep Inc.*, No. 17cv9325, 2018 U.S. Dist. LEXIS 116372, at *19 (S.D.N.Y. July 12, 2018).

38. Plaintiffs allege that, "when circulating the DFS Response, Defendants had actual knowledge that they had *thousands* of impacted policyholders in New York."  Compl. ¶ 67

(emphasis added).  Even if the court construes "thousands" narrowly to represent only 2,000 policyholders, a conservative estimate of the alleged statutory damages available to those potential 2,000 members would equal $2,000,000 (2,000 class members X $1,000), *on top of actual damages*.

39.  Moreover, Issuing Defendants issued *22,043* policies (within the definition of the in New York.  Morgason Dec. ¶ 6.  As each New York class member seeks a statutory penalty of up to $1,000 in trebled damages, the cumulative potential statutory penalty equals at least $22,043,000 for purposes of calculating the amount in controversy.  This conservative estimate of statutory remedies available to Plaintiffs and the putative class members significantly exceeds CAFA's jurisdictional threshold.

40.  In short, because Plaintiffs seek significant actual and statutory damages, it is "obvious from a common-sense reading of the complaint" that no legitimate dispute exists that the amount at stake exceeds $5,000,000.  *Oberle v. Solid Platforms, Inc.*, 2008 WL 2839021, * 3 (C.D. Ill. July 22, 2008).

### iii. *Declaratory Relief*

41.  In addition to statutory penalties and compensatory damages, Plaintiffs seek a declaratory judgment declaring (erroneously) that Defendants' policies provide coverage, and that Defendants are liable, for the full amount of "losses sustained by Plaintiffs and Class members arising from and relating to the [novel coronavirus] and/or the [related government orders]."  Compl, Wherefore cl. (b)(1).  Such a declaration would fundamentally enlarge the scope of Defendants' policies from providing coverage where physical damage causes business interruption, to policies that provide coverage in the absence of any physical damage but where a civil authority enters an order to enforce social distancing or to achieve some other supposed

societal benefit. Every policyholder—more than 144,331 of them—is potentially a member of the putative class insofar as Plaintiffs and the putative class seek declaratory relief.

42. In calculating the value of declaratory relief for amount in controversy purposes, the Court should consider the value of all relief and benefits Plaintiffs and putative class members would derive from a declaratory judgment in their favor. The Second Circuit measures the amount in controversy in declaratory actions by reference to "the value of the consequences which may result from the litigation." *See AVA Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 527-28 (S.D.N.Y. 2008) (utilizing "the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted" as the measure for calculating the amount in controversy under CAFA and finding the jurisdictional threshold satisfied where the class sought a declaration rendering null and void an insurer's denials of over $40,000,000 in claims) (citations omitted). *See also Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975); *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Perez v. Foremost Ins. Co.*, No. 17-CV-997S, 2018 U.S. Dist. LEXIS 93421, at *3-4 (W.D.N.Y. June 4, 2018) (citing *Hartford Ins. Grp. v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (internal quotations omitted).

43. Defendants have issued to policyholders nationwide 144,331 commercial policies with business interruption coverage that do not contain the so-called "virus exclusion" and hence would be part of the putative class. Should Plaintiffs succeed in obtaining the declaratory relief they seek, each policyholder could potentially receive business interruption coverage not provided for by the terms and conditions of the policies—not only with respect to the COVID-19

pandemic, but with respect to potential future pandemics. This benefit to all policyholders would be a logical consequence of the declaratory relief Plaintiffs seek and would far exceed $5 million. *See, e.g., Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1180 (D.N.M. 2012) (in CAFA action where putative class of insureds sought declaratory relief reforming their insurance policies to provide expanded coverage, the proper measure of the "relief and benefits that would logically flow from granting the declaratory relief sought by [the insureds]" was the additional increase in coverage; even if the insureds never used it, the increased coverage would provide "a benefit in the form of peace of mind as well as added protection should the coverage ever be needed"); *Rasberry v. Capitol County Mutual Fire Insurance Co.*, 609 F. Supp. 2d 594 (E.D. Tex. 2009) (finding that "one realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on 6,643 policies ($166,324,177) considering that [the plaintiff] alleges that [the defendant insurer] systematically mishandled all Hurricane Rita claims"); *Robinson v. Home Indem. Co.*, 316 F. Supp. 129, 131 (E.D. Ark. 1970) (where plaintiffs sought to reform insurance policy, amount in controversy was measured by the increased exposure to the insurance company that would result from increasing coverage to the insured).

44.  In sum, there is no doubt that this putative class action involves more than 100 class members and damages in excess of $5,000,000.

## VII.  DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

45.  In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all counsel of record, along with a copy of the Notice to the Clerk of the Court for the Supreme Court of Erie County, New York.

14

46. In accordance with 28 U.S.C. § 1446(a), a true copy of all state court process, pleadings and orders served on Defendants are attached to this Notice.

**VIII. NON-WAIVER OF DEFENSES.**

47. By filing this Notice of Removal, Defendants do not waive any defenses available to them.

48. By filing this Notice of Removal, Defendants do not admit any of the allegations in Plaintiffs' Complaint. Defendants expressly reserves the right to contest those allegations at the appropriate time.

49. All Defendants consent to the removal of this action to this Court.

**WHEREFORE**, Defendants remove the above-captioned action from the Supreme Court of Erie County, New York and request that further proceedings be conducted in this Court as provided by law.

Dated: July 14, 2020

Respectfully submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
MURA & STORM, PLLC
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

Adam J. Kaiser, Esq.
ALSTON & BIRD, LLP
90 Park Ave,
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

*Attorneys for Defendants*